State v. Philip Morris USA Inc., 2005 NCBC 5

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                                                        SUPERIOR COURT DIVISION
COUNTY OF WAKE                           FILE NO. 98 CVS 14377


STATE OF NORTH CAROLINA,          )
                                                      )
                    Plaintiff,          )
                                                      )
         v.                                      )
                                                      )
PHILIP MORRIS USA INC.,                 )
R.J. REYNOLDS TOBACCO COMPANY, )                    ORDER
BROWN & WILLIAMSON  TOBACCO    )
CORPORATION, individually and as      )
successor by merger to the American     )
Tobacco  Company; and                      )
LORILLARD   TOBACCO COMPANY,    )
                                                      )
                    Defendants.         )

{1}      This matter comes before the Court on defendants' motion for further proceedings regarding the fourth quarter payment for 2004 and plaintiffs' motion for interest, administrative costs, and attorneys fees.

{2}      Defendant Philip Morris USA Inc. (formerly known as Philip Morris Incorporated) ("Philip Morris") is a Virginia corporation whose principal place of business is 120 Park Avenue, New York, New York 10017.  Defendant R.J. Reynolds Tobacco Company (individually and as successor to R.J. Reynolds Tobacco Company and Brown and Williamson Tobacco Corporation ("Brown and Williamson")) ("Reynolds") is a New Jersey corporation whose principal place of business is Fourth and Main Streets, Winston-Salem, North Carolina 27102.   Defendant Lorillard Tobacco Company ("Lorillard") is a Delaware corporation whose principal place of business is 714 Green Valley Road, Greensboro, North Carolina 27404.  Defendants (collectively referred to as "Settlors" or "Tobacco Companies") manufacture, advertise, promote, and sell cigarettes and other tobacco products.  Defendants are parties to the Master Settlement Agreement and the Trust Agreement.   Defendants bring the motion for further proceedings regarding the fourth quarter payment for 2004.

{3}      Plaintiff JPMorgan Chase Bank ("Trustee") serves as trustee for the National Tobacco Settlement Trust ("Trust").  The States of Alabama, Florida, Georgia, Indiana, Kentucky, Maryland, Missouri, North Carolina, Ohio, Pennsylvania, South Carolina, Tennessee, Virginia, and West Virginia are each represented by a certification entity created to help administer the Trust pursuant to the Trust Agreement. Plaintiff Certification Entities (collectively "Certification Entities" or "Entities") and Trustee bring the motion for interest, administrative fees, and attorneys fees.

> *Ellis & Winters by Richard W. Ellis and Thomas D. Blue Jr., for JPMorgan Chase Bank, as Trustee for National Tobacco Settlement Fund and North Carolina Phase II Tobacco Certification Entity, Inc.; Kelley, Drye & Warren LLP by Sarah L. Reid for JPMorgan Chase Bank, as Trustee.*

*Attorneys General for individual State Certification Entities: by Karen E. Long, Special Deputy Attorney General, for the State of North Carolina; Michael Plumley, Assistant Attorney General, for the Kentucky Settlement Trust Corporation; Joel M. Ressler, Chief Deputy Attorney General, for the State of Pennsylvania; Craig A. Nielson, Assistant Attorney General, for the State of Maryland; Daniel W. Champney, Assistant Attorney General, for the State of Tennessee; Sidney A. Barrett, Jr., Senior Assistant Attorney General, for the Georgia Tobacco Community Development Board.*

*McGuireWoods LLP by Alexander H. Slaughter, Michael C. Griffin, Scott C. Oostdyk and Alexander J. Brackett, for the Virginia Tobacco Trust Certification Board.*

*Shanahan Law Group by Kieran J. Shanahan and Reef C. Ivey, II, amici curiae for Phase II Beneficiaries and the Tobacco Growers Association of North Carolina.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jim W. Phillips, Jr., Robert J. King III and Charles F. Marshall III, for Defendants R.J. Reynolds Tobacco Company, Brown and Williamson Tobacco Company and Lorillard Tobacco Company.*

*Smith Moore LLP by Larry B. Sitton, Gregory G. Holland and Jonathon P. Heyl; Arnold & Porter by Robert Jones for Defendant Philip Morris USA Inc.*

I.

PROCEDURAL HISTORY

{4} In November 1998 the Settlors entered into a Master Settlement Agreement ("MSA") with forty-six states, the District of Columbia, the Commonwealth of Puerto Rico, and four United States Territories. The MSA was designed to reimburse States for the cost of treating smoking-related illnesses. On December 21, 1998, a Consent Decree and Final Judgment was entered by the North Carolina Superior Court approving the terms of the MSA. A decree and final judgment was entered in each jurisdiction that was a party to the MSA.

{5} Prices were soon raised to cover the costs of the MSA. Because these increased prices would cause a reduction in tobacco consumption, in 1999 the National Tobacco Grower Settlement Trust ("Trust") was established to provide aid to tobacco growers and tobacco quota owners in fourteen "Grower States." In 2004, the parties entered into the National Tobacco Grower Settlement Trust Agreement Amendment Number One ("Amendment One"). Amendment One provided for a refund of a portion of Settlors' payments into the Trust under certain circumstances.

{6} On October 22, 2004, the Fair and Equitable Tobacco Reform Act of 2004 ("FETRA") was signed into law by President Bush. FETRA provided for direct payments to tobacco growers and quota holders, funded by about $10 billion in assessments against tobacco product manufacturers and importers.

{7} On December 23, 2004, this Court ruled that the passage of FETRA entitled Settlors to offset any remaining payment to the Trust for 2004 and to a refund of all amounts paid into the Trust during 2004. *State v. Philip Morris USA Inc.*, 2004 NCBC 9, 2004 NCBC LEXIS 8 (N.C. Super. Dec. 23, 2004). On August 19, 2005, the North Carolina Supreme Court entered an opinion and order reversing this Court's December 23, 2005, decision. *State v. Philip Morris USA Inc.*, -- N.C. --, -- S.E.2d --, 2005 N.C. LEXIS 834 (2005).

{8} Defendants now move the Court to conduct additional proceedings on the issue of whether Settlors are required to make a payment into the Trust for the fourth quarter of 2004. Plaintiffs respond

with a motion for pre-judgment interest on the fourth quarter payments, administrative costs incurred in making multiple payments, and attorneys fees incurred in responding to defendants' motion.

II.

DEFENDANTS' MOTION FOR ADDITIONAL PROCEEDINGS

{9}     Defendants move the Court to conduct additional proceedings to determine whether the Settlors are required to make a payment into the Trust for the fourth quarter of 2004.  Defendants contend that it is not clear from the Supreme Court's opinion whether they are required to make the fourth quarter payment because the fourth quarter payment did not actually become due until 2005.  They point to language in the Supreme Court's opinion finding that Amendment One was intended to avoid "two payment streams . . . at the same time" and holding that "Settlors must actually assume the burden of FETRA before being relieved of their obligations to the Phase II Trust."  (Defendants' Motion for Additional Proceedings ¶¶ 16, 22  (quoting *State v. Philip Morris*, 2005 N.C. LEXIS 834, at *38).)  Defendants claim that since the Settlors assumed their obligations under FETRA in 2005 and because the fourth quarter payment could not be made, if at all, until 2005, Settlors would not be required to make those payments under the Supreme Court's decision.  Therefore, they argue, additional proceedings are needed to clear up the issue.  The Court, however, disagrees.

{10}    There are five primary reasons for the Court's denial of the motion for further proceedings.  First, the Supreme Court reversed this Court's opinion which specifically held that the fourth quarter payment was not due.  Second, the language of the Supreme Court opinion is clear and unequivocal.  Third, a ruling that the fourth quarter payment can be avoided would be inconsistent with the principles underlying the Supreme Court opinion.  Fourth, it is unlikely that the Supreme Court intended to leave tobacco farmers and the Trustee with the practical problems which would accompany a remand for consideration of the fourth quarter payment. Fifth, it would be inequitable to permit the Settlors to avoid the fourth quarter payment because this Court erroneously decided they did not have to make the payment in December 2004 when it was due.  Settlors could not have unilaterally withheld payment until 2005 and then claimed payment was not due because FETRA required payments in 2005.

{11}    The Supreme Court's opinion decided all issues, and the case was not remanded to this Court for determination with respect to fourth quarter distribution.  There was no reason to remand the case for further consideration and no direction to this Court that it do anything other than enter judgment <u>not inconsistent with</u> the Supreme Court opinion.  *State v. Philip Morris*, 2005 N.C. LEXIS 834, at *38-39.

{12}     This Court clearly ruled on the issue of the fourth quarter payment separate and apart for the refund issue. *See State v. Philip Morris*, 2004 NCBC 9, at ¶¶ 51, 97, 2004 NCBC LEXIS 8, at **46, 78.  It specifically held: "The motions of the Trustee and the Certification Entities for specific enforcement of the Tobacco Companies' obligations to make the December 2004 payment to the Phase II Trust is denied." *Id*. at ¶ 114, 2004 NCBC LEXIS 8, at **94.  This Court's Order was not reversed in part and affirmed in part. It was reversed with instructions not to enter any order inconsistent with the Supreme Court opinion.  In its opinion this Court took pains to point out the overlap in the assessment periods. *Id.* at ¶ 80-83, 2004 NCBC LEXIS 8, at **67-70.  Had the Supreme Court believed that the overlap in the assessment periods was critical, it would have said so or reversed the trial court's finding of fact.  It did neither.  It  decided that Congress intended that FETRA be assessment neutral and effective only on a cash payment trigger in 2005.  Otherwise, the Tobacco Companies would have been entitled to a full refund.  The only logical reading of the Supreme Court opinion is simply that the Trust Agreement is interpreted

on a cash payment basis. If the Settlors were not required to make a cash FETRA payment in 2004, they were required to make all their 2004 Trust payments. The Supreme Court specifically held that no cash payment was made or required by FETRA for calendar year 2004. The Supreme Court also said: "That Settlors received no FETRA assessments last year *suggests* they did not rate a Tax Offset Adjustment for their final 2004 payment." *State v. Philip Morris*, 2005 N.C. LEXIS 834, at *32 (emphasis added). This Court would be remiss if it ignored a direct suggestion of the Supreme Court on remand. To not follow the Court's suggestion would be to enter an order inconsistent with the Supreme Court's opinion.

{13}     If, in fact, a payment was due in December 2004 under FETRA, there could be no avoiding the clear language of the Trust Agreement and Amendment One. There would have been a Governmental Obligation due in 2004 under an enacted effective statute which Governmental Obligation was greater than the remaining payments due from the Tobacco Companies under the Trust Agreement. The Supreme Court interpreted Congressional intent to require payments to begin in 2005, thus obligating the Tobacco Companies to make all of their 2004 payments under the Supreme Court interpretation of the Trust Agreement. The Supreme Court had to find that there was no Tax Offset Adjustment for 2004; otherwise, the provisions of Amendment One to the Trust Agreement would have required a refund of all payments for 2004.

{14}     Defendants' reliance on certain words or phrases in the opinion is misplaced considering the opinion as a whole. The Court finds the defendants' position that they do not owe the fourth quarter 2004 payment to be inconsistent with and contrary to the express language of the Supreme Court.

{15}     Specifically, language from the Supreme Court's opinion indicates three crucial findings. First, the Supreme Court gleaned a Congressional intent to avoid elimination of the 2004 trust payment obligation. *State v. Philip Morris,* 2005 N.C. LEXIS 834, at *37 ("On balance, we do not perceive in FETRA a congressional desire to give Settlors a Tax Offset Adjustment for 2004. Had it wished, Congress could have signaled such intent by explicitly directing the Secretary of Agriculture to collect the first FETRA assessment before 31 December 2004. It chose not to do so."). Second, the Supreme Court found the language of the Tax Offset Adjustment to require an actual cash payment in 2004 to trigger the offset. *Id*. at *38 (2005) ("[W]e hold that Settlors must *actually assume* the burden of FETRA before being relieved of their obligations to the Phase II trust.") (emphasis added); *see also id.* at 26 ("We construe [the language on page A-7 of Schedule A] to mean a Tax Offset Adjustment occurs when Settlors have *actually paid* a Governmental Obligation.") (emphasis added). Third, it found no cash payment was due under FETRA until March 31, 2005. *Id*. at 37 ("The U.S. Department of Agriculture's final rule on Tobacco Transition Assessments interprets FETRA's 'contradictory' provisions to mean Congress intended the first FETRA assessment to be due on 31 March 2005.") (citing Tobacco Transition Assessments, 70 Fed. Reg. 7009 (Feb. 10, 2005)).

{16}     This Court is unable to read the decision of the North Carolina Supreme Court in any way other than to require the defendants to make all four payments for 2004. The Supreme Court clearly held that in their view FETRA did not require payments to be made in 2004, and therefore there were no governmental obligations excusing payment of the 2004 assessment by the defendants.

{17}     Nor does this Court believe that the Supreme Court was insensitive to the practical problems created by a failure to decide the issue of the fourth quarter payment. This Court entered its order on December 23, 2004. When the Supreme Court entered its opinion on August 19, 2005, it knew that the 2004 payment to farmers had been delayed by nine months. I t was aware that if it did not deal with the

fourth quarter payment, either final payment would be delayed to all farmers or the Trustee would incur substantial expense in making two distributions to hundreds of thousands of farmers. It would not have ignored the practical consequences of a failure to rule on the fourth quarter payment. It is clear that the Supreme Court believed it had taken care of that issue or it would have specifically remanded the case with a direction to this Court to decide the issue again. It did not do so.

{18} Defendants should not be permitted to argue that they are not required to make the fourth quarter payment due on December 15, 2004 because they obtained a stay order relieving them of the obligation which was subsequently reversed by the Supreme Court. To do so would permit them to unilaterally alter the contract by delaying payment for any reason.

{19} Consequently, the Court rejects defendants' motion for additional proceedings and orders that defendants make payments for the fourth quarter of 2004 as specified on the line labeled "December 15" on the Independent Accountant's report dated 24 November 2004.

### III.
### PLAINTIFFS' MOTION FOR INTEREST,
### ADMINISTRATIVE COSTS, AND ATTORNEYS FEES

{20} Plaintiffs ask the Court to order defendants to pay pre-judgment interest on the fourth quarter payment. Plaintiffs argue that they are entitled by statute to receive interest at 8% per annum from the time of breach until the judgment is paid. Under N.C. Gen. Stat. § 24-5, a non-breaching party is entitled to recover pre-judgment interest on damages from the date of breach at the legal rate if the parties have not agreed upon an interest rate. N.C. Gen. Stat. §24-5(a) (2004). The parties here have not agreed on an interest rate. The legal rate is 8% per annum. N.C. Gen. Stat. § 24-1.

{21} Defendants breached the contract on December 15, 2004, when the fourth quarter payment became due and was not paid. Therefore, plaintiffs are entitled to interest at a rate of 8% per annum from December 15, 2004, until the payment is paid.

{22} Plaintiffs also ask the Court to order defendants to reimburse the Trustee for additional costs it would incur if required to make a separate payment for the fourth quarter. Additionally, they ask for attorneys fees and expenses incurred in responding to defendants' motion.

{23} It appears to the Court that the payment of the fourth quarter amounts can be made in time to prevent additional costs to the Trustee or separate mailings. In the event there is an appeal which delays distribution and a subsequent affirmance of this Court's interpretation of the Supreme Court's opinion, this Court will have the benefit of guidance from the Supreme Court with respect to the frivolous nature of the appeal and can assess the costs actually incurred by the Trustee in having to make a subsequent distribution. This Court will not stay this Order; however, Settlors may petition the Supreme Court for a Stay which should be granted if this order erroneously interprets the Supreme Court opinion.

### IV.
### CONCLUSION

{24} Based upon the foregoing, it is hereby ORDERED, ADJUDGED and DECREED:

1. Defendants' motion for additional proceedings on the issue of the fourth quarter payments is DENIED, and defendants are ordered to make payments as specified on the line labeled "December 15" on the Independent Accountant's report dated 24 November 2004 within ten business days.

2. Defendants are ordered to pay pre-judgment interest at 8% per annum from December 15,

2004, until the judgment is paid.

3. In the event of an appeal delaying distribution of the fourth quarter 2004 payments which results in separate mailings or other additional costs to the Trustee, the Court reserves ruling on the motion to order defendants to reimburse the Trustee for those additional costs.

4. Plaintiffs' request for attorney fees is denied.

IT IS SO ORDERED, this the 19th day of October 2005.